Our last oral argument of the day 25-2016 Ortiz y Pino v. Oliver. Mr. Baca. Yes, your honor. Proceed. Thank you. Philip Baca on behalf of the good senator Jerry Ortiz y Pino. In Holmans v. City of Albuquerque this court stated Buckley v. Valeo concluded with a broad holding that government does not have the right to pass judgment on how or why a person expands campaign resources. That broad holding is the cornerstone of this appeal. And that's because contrary to Holmans, the district court and the secretary of state, contrary to Holmans, assert that the secretary of state has the right to pick and choose which charitable campaign expenditures are protected by the first amendment. And more precisely, the decision below expressly stated that section 1-19-29.1a4 does not restrict speech due exclusively to the secretary of state's promise to, as she put it, consider any funds spent for the purpose of conveying the political viewpoints of a candidate to be permissible expenditures of the campaign. And as an example of this, the secretary of state reassured the district court and the district court accepted his reassurance that a campaign, charitable campaign expenditure to a young woman seeking an abortion would be protected by the first amendment and would at no time, either in the district court opinion, either by the secretary of state, below or here on appeal, at no time has either the district court or the secretary of state explained, well, what about Senator Ortiz-Pino's charitable campaign expenditure to a young girl seeking to be a prosecutor? Why is that not protected by the first amendment? How is that speech? What's the speech? The speech is I support a young woman seeking a public service career as a prosecutor. That's the speech. What if the senator wanted to give $200 to a spouse and just hand it to him? What would the speech be there? There is no speech there. Right. That's because that is money given to oneself. And the U.S. Supreme Court decided that, held that in Brown versus, no, I'm sorry, O'Donnell versus FEC is the district court opinion on that case. If you're giving money to yourself, that's not a speech. Okay, so fair enough. So you would agree, wouldn't you, that the secretary of state has to have some role in determining whether something is speech or not speech under the statute? No, that's not delegated. That is entirely self-delegated. How could it ever be regulated? It could be regulated. She has to regulate the expenditures. Yes, and she has to regulate the expenditures based on neutral criteria. That's what the U.S. Supreme Court has said. There have to be criteria in the statute. So she just can't exercise unbridled discrimination, unbridled discretion to decide what is and what is not speech. But I guess, go ahead. Yes. Well, can I ask a follow-up question, Judge Carson? So what if he didn't give $200 to his spouse, but perhaps the young girl was a neighbor and lost a friend at school who was destitute and couldn't afford the funeral and donated the campaign resources to the girl in order to give to her friend to pay for the funeral expenses? Would that be protected speech? Yes. And in fact, here in Mexico, you frequently see people, groups of people collecting money for funerals. And in fact, there have been scandalous killings here in New Mexico in which the victims are unable to afford a funeral, so money has been collected. And so yes, the campaign contribution to those would be First Amendment speech. All right. So you mentioned one instance. Oh, I'm sorry. Please go ahead. So you mentioned so far two instances that would be covered by the statute that would be protected speech. That one in the first example, the example that Judge Carson gave would be covered by the statute, but would not be protected. So I take it that there are instances that would be captured by the statute that would involve protected speech in some examples that would not be protected speech. Is that fair? Yes, but the statute, I mean, keep in mind, the statute doesn't state that. The statute is very broad. I mean, if the legislature wants to make these exceptions and clarify it, just as the federal government has and just as other states have done, as noted in the amicus brief, that has to be done by the legislature. Those exceptions have to be carved out. Yeah. And so that's the problem with the statute. Well, that may be a problem with the statute, but as I understand it, that the statute covers both protected speech and unprotected acts, correct? No, the only so far, the only one that Judge Carson mentioned, and you said that's not speech. That is not speech. And there's a case law on that, that giving money to yourself is not speech. But that's covered by the statute, correct? You cannot donate to individuals. That's correct. So there's an overlap there. So if the statute covers both protected speech and unprotected acts, the example that Judge Carson gave, that might support an as-applied challenge, but that's pending. That's not before us. Why isn't it preclusive of a facial attack if the statute covers both protected speech and unprotected acts? Because under FEC versus Cruz and under Homans and under Republican Party versus King, there has to be a showing that the legislature was concerned about corruption. There has to be evidence of that. It just can't be conjecture that that's a problem. There actually has to be a problem, a documented problem. And the statute has to be narrowly tailored. And that's the fundamental problem here, is the statute is not narrowly tailored. It has to be narrowly tailored. Let me back up a little bit. There's speech and then there's speech. It matters what sort of speech we're talking about. And in Homans, it wasn't, you can't spend your money for this purpose or that purpose. It was an overall cap on how much you could spend. Am I correct about that? Yes, that's absolutely correct. So it's a little different context, but the Supreme Court has treated contributions as having some First Amendment protection of speech, but not that much. Let me read you from Federal Election Commission versus Beaumont. This is a 2003 opinion. And there they were talking about restrictions on political contributions, which are probably as much speech as you get. And the court said, let me see. It said the petitioner argues that application of the ban on its contributions should be subject to a strict level of scrutiny on the ground that statute does not merely limit contributions, but bans them on the basis of their source. This argument, however, overlooks the basic premise we have followed in setting First Amendment standards for reviewing political financial restrictions. The level of scrutiny is based on the importance of the, quote, political activity at issue to effective speech or political association. Then it turns specifically to political contributions. Restrictions on contributions have been treated as merely marginal speech restrictions subject to relatively complacent review under the First Amendment because contributions lie closer to the edges than to the core of political expression. While contributions may result in political expression if spent by a candidate or an association, the transformation of contributions into political debate involves speech by someone other than the contributor. And this is the core thing. And this is, I think, the key to how we have to analyze this. What is the standard of review? Says this is the reason that instead of requiring contribution regulations to be narrowly tailored to serve a compelling governmental interest, a contribution limit involving significant interference with associational rights passes muster if it satisfies the lesser demand of being closely drawn to match a sufficiently important interest. And it seems to me that that reasoning would apply just as much to a contribution made by a political committee as a contribution to a political committee. So do you want to respond to that? Yes. First of all, this was never this was never asserted by the district court in the decision below. But secondly, and most significantly, this is not a contribution. This is an expenditure by the candidate. And it's not the same contribution. No, you're talking about an expenditure to a young girl who wants to go to law school. That's the expressive content of that is very limited. And the restriction on an expression is very limited. Mr. Ortiz, Senator Ortiz-Pino could say, I'm very much in favor of this woman going to college and I would like other people to contribute. He can say all that. He's not restricted from saying that. The fact that he gives her some money himself does have an expressive component to it, but it's not much according to the analysis in the Beaumont case. And that's why the standard of review isn't as strict as you're saying. It seems to me, I realize Beaumont was not cited by the parties, but we've got to decide. And I think it's a very fundamental part of this issue. What is the standard of review we're supposed to apply here? And as I read that, it's saying that the fact that you gave money to someone, it's expression or can be, but it's not much because it doesn't really keep you from speaking your mind about whatever you want. Except that all of the cases that have addressed this issue, charitable campaign expenditures, like for example, the Eighth Circuit and the Florida case, they applied exacting scrutiny. They treat all of these as expenditure cases, not under the contribution analysis. The same thing with the cases of giving money to people waiting in line. Those have all been analyzed under exacting scrutiny. So nobody is saying that this is a contribution. And look at Cornelius versus NAACP. That was solicitations by charitable. And that's clearly speech. That's clearly speech. If this student was seeking contributions from the campaign, that's speech. That's clearly speech. Making a contribution is much less. So, pardon? But the Supreme Court in Cornelius did not make that distinction. They said specifically that responding to that speech is also protected speech. And so they didn't diminish that some speech is less than other speech. They put that on the same order. Cornelius was not an expenditure case, but they did address that. The responding to that solicitation is protected speech. First Amendment protected speech. Let me address the second component. And I have a hunch we're going to go over your time. Don't worry too much about that. These are important and I think difficult issues to address. You seem to say that the only justification for these restrictions is the potential for corruption. And the amicus brief suggests otherwise. And I thought it made some decent points and I'd like to expand upon that. Here you have money that you could say is held in trust by the campaign committee or by the candidate. Someone has contributed to your is you hold this money in trust and you can spend it for these things. And one is for campaign purposes. Another is if the candidate is a public official, there may be expenses incurred by the public official that can be reimbursed. And you can give money to the state coffers. If you have money left over, you can give it to the general fund. You can repay it to the contributors, pro rata. And kind of a sea prey provision. If nothing else is available, you can give it to a charity, to a 501c3 charity. And is that not a strong public interest in saying that if someone has money contributed to the campaign, then the state can say we're going to enforce the understanding of the contributor about how that money can be used? Is that not a significant interest? This is not the state's money. But you're right, it's held in trust for the people who donated the money. But it's the First Amendment that governs, for example, the distinction between a 501c3 and say a 50c4, for example. That's content discrimination. That is clear content discrimination. The state can't say, well, you can give to Planned Parenthood's 501c3 organization, but you can't give to Planned Parenthood's 50c4, which engages in advocacy. You cannot donate to that. That's content discrimination. Well, does that mean... Is it, can the state not at all regulate the use of campaign money based on the legislature's understanding of what a contributor would expect to be done with the money? Is that an important interest? No, this is governed purely by the First Amendment campaign expenditures. And the statute, the statute refers to these as expenditures. These expenditures are governed by the First Amendment. The First Amendment tells the states what limited authority they have. They are not free to decide based on public interest. To regulate a campaign expenditure, there has to be quid pro quo corruption. There has to be evidence of that. It cannot be conjecture. And it, and there can be content discrimination. It's not, it's not up for the state or the secretary of state to pick and choose. That's viewpoint discrimination. When you get down to that level, how come the secretary of state and the district court have never explained why Senator T.C. Pino's contribution is not protected by the First Amendment? There's never been any explanation for that. That's viewpoint discrimination when you're making those distinctions. And the Supreme Court has said so. Did the other members of the panel have any questions? I do, if you don't mind. I just want to follow up. You do rely, as I understand it today, and certainly in your briefing on strict scrutiny predicated on content-based discrimination. You haven't made an alternative argument for intermediate scrutiny, which is your prerogative as the appellant. If we decide, as the Supreme Court did in TikTok versus Garland, that it wasn't content-based discrimination, do we affirm, we don't have, you know, theoretically, there could be an appeal in which we have alternative briefing on intermediate scrutiny, but we would be on our own without the input of anything. So if we do, I understand you want us to say that it is content-based and you make a strong argument to that regard, but if it's not content-based discrimination, do we affirm? No, you can remand for the court to consider an alternative level of scrutiny. But, you know, keep in mind the district court originally applied strict scrutiny when she granted the preliminary injunction. She saw this as a standard campaign finance case involving campaign expenditures. That's how it was originally viewed. And it wasn't until the secretary of state promised to view a campaign expenditure to a woman seeking abortion as protected speech. It wasn't until then that the district court changed. And, you know, let me, can I ask? Sure, go ahead. So why, you know, give me your best argument for why it is content-based discrimination under A4 when it seems to me that you're talking about the mechanism for a, to take your point, an expenditure of the campaign. You know, if there was a donation to a you know, to an individual that's not a 501c3 entity to let's say for an abortion fundraiser, then that presumably would be under A1. That would be an expenditure of the campaign. If, if there was a donation to a 501c3 entity that funds young kids going, you know, to pre-law and they don't, didn't donate to this young lady and the senator's donation to this young lady for the $200 doesn't count. Why is it in a reasonable view to say it's not because of animosity to pre-law kids? It's just, it's just a, you know, a preference for, you know, for giving an exception to under 501c3 because to take Judge Carson's original point, 501c3 has a, has a tax rule that specifically prescribed self-dealing, which is not true for this particular expenditure. So why is this content-based as opposed to just a reasonable difference in the protections that are afforded to 501c3 entities and just individuals that don't have those safeguards under the tax code and the associated rules? I'm sorry, are you saying why is a donation? Why, why, why is this content-based as opposed to, uh, uh, uh, based on the, uh, a difference in the protections that are afforded to 501c3 entities versus other recipients of expenditures? Well, why is there, well, and let me be clear on this point, uh, Senator Ortiz, he, you know, in the, in the record below testified that he has given campaign contributions to 504 organizations and he has, and intends to, wants to after this litigation. I'm not talking about justiciability. I'm talking about on the merits, why is it based when there are specific safeguards under 501c3 and the tax rules that are not available to non-501c3 entities like 501c4 entities. But why, see, and here's a perfect example. The safeguards in the 503 are purely tax-based. The federal, and the Supreme Court has held this in Regan. The Supreme, the legislature has decided to give tax subsidies to people who give to 503. So that's why there's protections there. And there's, and there's limitations on what a 503 can do. They cannot lobby the legislature. For example, a 504 can, uh, a 504 can engage in advocacy. Um, so for example, there was a ballot question, uh, uh, here in Albuquerque on, on a late-term abortion. 504, the 504 Planned Parenthood got, got involved in that. Now if Senator Ortiz Cipino makes a contribution to that, and we have a different Secretary of State who decides, no, I don't think that's protected speech. That's the, therein lies the problem with the unbridled discrimination. Who is making that determination? It's not in the statute. The statute doesn't give any guidance on that point. And so that's why the Supreme Court has always said unbridled discrimination is unconstitutional. Mr. Baca, we want to allow you to air your views, but we're already well over time. So I think you've made that point very clearly. Thank you. Any other questions from the panel? No, I appreciate that, Mr. Baca, and I appreciate that Judge Hartz. Thank you, Your Honor. Thank you, Mr. Baca. Mr. Tucker? Oh, you're on mute. You're on mute, Mr. Tucker. I don't, we haven't heard a word you've said. We haven't disagreed with anything you've said. Mr. Tucker, you're muted. My apologies. My name is Alex Tucker, and I represent Secretary Oliver along with my colleague Larry Marcus on the brief. May it please the Court. Let me start by getting some background straight, because this statute talks about payments by campaign committees and or candidates. So apparently in New Mexico, a candidate doesn't have to have a campaign committee to receive political contributions. They can be made just directly to the candidate. Am I correct about that, or is there something I'm missing in the law? I'm not sure about that, Your Honor. Typically, a candidate collects and spends funds through a campaign committee, and if we look at the definitions in 119.26, the campaign committee typically is always making expenditures towards the actual campaign operations and political speech. But it doesn't, the statute does not seem to restrict itself in these requirements we're talking about to campaign committees. It says candidate or campaign committee, does it not? And so I was just wondering how that worked. How can you tell when somebody gives money to a candidate whether that's a personal gift? See, it says it is unlawful for a candidate or the candidate's agent to make an expenditure of contributions received except for the following purposes or as otherwise provided in this section. So if a candidate can accept political donations, how do you know when that candidate spends money, whether that's money that was made as a campaign contribution, or maybe if the senator is known for being generous with students who want to go to law school or whatever, that, yeah, I'll contribute to that for the senator. I'm not interested in this campaign. How do we distinguish that? Or am I missing something and every candidate has to have a campaign committee through which the contributions are funded? Your Honor, I'm actually not familiar enough with the statute to touch on that issue, considering that this is a facial challenge only to subsection A4 of 119.29.1. I would be happy to offer additional briefing to the extent that would assist the court, but I did want to focus on why. I realize that's a little outside. It is outside the specifics of this case, but it makes it very difficult for me to analyze this if a candidate can't make a contribution to help someone go to college, but the candidate doesn't have a campaign committee, so the money just is going to the candidate, and the candidate can't distinguish between what's a gift to the candidate for use for anything or it's a campaign contribution that's restricted by this law. If you could, if the parties could give some guidance on that, I would find that relevant and perhaps helpful. Thank you, Your Honor. I'm not sure I can provide that right now on the spot. 28-J letters are fine. Do that within a week, though. Do it before Thanksgiving. We'll give it to Wednesday before Thanksgiving. Is that enough time? Yes, sir. Mr. Baca? Your Honor, I'm flying out this afternoon for Thanksgiving. Could we extend it to the first week of December 1st? If you're not happy with what Mr. Tucker provides, then, yeah, let us know by then, okay? Okay. Thank you, Your Honor. Okay. Now we're ready to, you can start with the argument you were planning to make, Mr. Tucker. Thank you, Your Honor. I want to remind the Court first that at issue today is only a First Amendment facial challenge specifically to subsection A4 of section 1-19-29.1 of New Mexico's Campaign Reporting Act, and I'm going to refer to that statute as New Mexico's personal use statute because the purpose and function of this statute is not to regulate speech or things that would actually be considered legitimate campaign expenditures protected by the First Amendment, but the types of improper use of campaign funds for non-campaign purposes that do not necessarily create a message or further political messaging or operation of an actual campaign. The District this Court should affirm for two reasons. The first is because plaintiff does not have standing to bring his facial challenge. The second reason is because his facial challenge fails on the merits, and I'll start with standing, and I'm going to go a little bit out of order because I think redressability is really the fatal flaw here, but there's also some issues with injury, in fact, but I'll start with redressability. The plaintiff's case functions on a fundamental misreading of subsection A4. Instead of reading the statute as a whole and in relation to its other parts, plaintiff reads subsection A4 as creating a de facto ban on any and all campaign expenditures to 501c4 organizations. Accordingly, in his complaint, the relief he seeks is a declaration providing that only subsection A4 violates the First Amendment of the Constitution as well as a permanent injunction enjoining the state from ever enforcing subsection A4, but the Senator has misunderstood that A4 creates a de facto ban on donations to 501c4 organizations. If an expenditure would further the operations or messaging of the campaign, of course, that wades into political speech and would be allowed under other subsections of the statute. Again, if you read A4 in a vacuum, sure, you might be able to construe it the way my colleague does, but that's not what case law tells us to do. In a facial challenge, we have to first look at a statute to see how it operates, and part of that is following basic canons of construction that provide that we legitimately further a campaign and therefore be covered by the First Amendment is usually going to fall under subsection A1. That's only if we subscribe to the district court's interpretation of A1, right? Sorry, Your Honor, I missed the first part. That's only if we subscribe to the district court's interpretation of A1, which is a merits-based inquiry, right? The district court's interpretation A1, Your Honor, is a reasonable interpretation that case law instructs courts to reach. I understand that, but I thought you were addressing standing instead of the merits of his First Amendment claim. I'm getting there, Your Honor. The addressability issue arises from this misunderstanding of the statute. A4 by itself just creates a presumption of legality for money going from a campaign account to a 501c3, and so if this court gives plaintiff everything he wants, and that's a declaration that A4 is invalid and unenforceable, all that would do is just remove the presumption of legality for expenditures to 501c3 organizations, which would not... Let me push back on that. Okay, sorry to talk over you, but because you make that argument in your brief very well, and I understand that, but the plaintiff in their... The senator in his complaint also asks in his prayer for any other such relief as he may be entitled to under Rule 54c, and Rule 54c says every other final judgment should grant relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. So I do understand, and even if we credit your argument that the relief requested to eliminate A4 would not redress his injury. The substance of his claim is that the prescription of these expenditures, which is the entirety of the provision, should be invalidated as a violation of the First Amendment. Is that fair? I don't think that's fair, Your Honor. I think in Plaintiff's brief itself, he actually emphasized that the challenge is only to subsection A4. And I think if we observe traditional principles of judicial restraint when weighing facial challenges to state statutes, the considerations of severability and basically only touching the statute to the extent absolutely necessary to render it constitutional would apply here. And so to the extent the court would be looking at any further relief than what plaintiff has asked for, I think, one, there's a problem because there hasn't been meaningful record or argument developed as to those issues, and two, he just simply hasn't met any burden to show that A4, let alone larger parts of New Mexico's personal use statute or larger parts of the challenge. So just to recap redressability, once again, the purported injury is that the senator wants to spend money left in his campaign accounts, perhaps to individuals, perhaps to 501c4s. Eliminating A4 would not have the effect of allowing him to do that because the statute, when properly read as a whole and in relation to other parts of the it encompasses and allows anything that would be allowed under anything that would constitute First Amendment protections. So you're saying if a statute prohibits conduct, then there's no First Amendment interest to be addressed? I mean, even in O'Brien, where the Supreme Court upheld the ban on burning draft cards, the court acknowledged there was an expressive element to it and had a way of reviewing whether such bans on conduct can survive First Amendment review. They didn't say that because it's conduct burning a draft card, that therefore it can't be speech. I mean, Supreme Court said you can't ban flag burning, for example. I'm sure you're familiar with that case. Why do you say this is just conduct when some of it can be expressive conduct? Maybe I shouldn't have painted so broadly, Your Honor. What we're saying is that gifts to individuals that aren't directly related to campaign purposes have very little expressive conduct. And I understand that Your Honor has acknowledged that in the questioning to my colleague. But there's some. There may be some, but even though there may be some, we have examples where there is very little expressive value and the state has a serious interest in preventing self-dealing or other quid pro quo uses or improper uses of campaign funds, that these types of statutes, even if they operate to regulate in some instances, the fringe of constitutional speech, they're still assessed under rational basis review. And that's the Delaware, which is one of the only cases in federal law where we're dealing with at least somewhat on point analogy to a facial challenge to a personal use statute. The other cases that plaintiffs rely on are in the category of cases that I would call a hard limit or hard amount cases where the reasoning of Buckley kicks in because when you limit the amount of money that a campaign can spend, you are necessarily limiting any speech that would proliferate as a consequence of spending that money on additional campaign operations. But this speaks to the larger purpose of New Mexico's personal use statutes and personal use statutes across almost all 50 states and in federal law is that they don't target and are not intended to target actual protected political speech. They're intended to protect, to target conduct that is not protected by the first amendment. And that is the use of campaign funds for matters that are not campaign uses and do not necessarily further any sort of political speech. Spending money by itself isn't speech, particularly in the campaign context, unless you get into the money being used to further the operations and messaging of a political campaign, then it's speech. But other You're saying the only type of speech that counts is political speech. If a contribution is speech or has a speech component because it advances your political cause, then why can't, why is it not speech if your contribution advances some other cause that's not political? Well, it may or it may not. And the court doesn't have to engage in that speech line drawing to affirm the district court. Because if we look at New Mexico statute, just because the statute allows certain expenditures does not mean that those expenditures would also necessarily enjoy first amendment protection. It just means that New Mexico chooses to allow them. But anything that would enjoy first amendment protection, including certain expenditures to 501c4 organizations would typically be encompassed under other subsections of New Mexico's personal use and not necessarily subsection A4. Let's get to specifics. One thing Mr. Baca focused on is under your analysis, the secretary of state can make a decision that providing campaign funds to help someone get an abortion is protected. It's not prohibited by the statute. But using campaign funds to help someone go to law school is not protected. Is he characterizing correctly what the secretary of state's position is? He is not, your honor. What's his error? The problem is that, so if we go to the abortion hypothetical, in that hypothetical, the secretary considered it an expenditure of the campaign because, and if we look at the district court's discussion of that hypothetical, the donation itself carried with it significant indicia of speech and support of the campaign and the political message of the candidate. Okay, so why does that not also apply to the expenditure to allow to help this woman go to law school? Why is that different from the expenditure to help this person go to law school? Doesn't that convey a strong support for higher education? Not in and of itself, your honor. The only indication... So the secretary of state has that authority to decide, well, I don't think that expenditure, the expressive aspect of that expenditure is protected, but this other expenditure expressive component is protected. You're really going to let the secretary of state decide those things? And she's not necessarily deciding what is and isn't speech, your honor. Neither the statute nor the secretary decides what's first amendment. Let me focus that. Did she distinguish between the two types of expenditures, money going for an abortion and money going to help someone go to law school? Did she make a distinction between those two and one's prohibited and one's allowed? Whatever her reasoning, did she make that distinction? She might've had a good reason, but did she make that distinction? The distinction was based on the level... No, I'm not interested in her reasoning, we can get to that later. Did she say this one is allowed and this one is not? Did she reach that conclusion? She said that under her interpretation of the statute and the regulations she promulgated, because it carried the indicia of political speech with her... You're not answering my question. I just said, don't give me her reasoning. I want to know her bottom line. Was her bottom line that the money to help this woman go to college or law school was not... Was prohibited by the statute, but money to help somebody get an abortion was allowed under the statute. Was that her bottom line? Yes or no? No, your honor. Okay. So she said... Then why did she... What was the difference? What was the difference? Did she... She did say that the money going to help this woman go to law school is permitted under the statute. That's what you're saying. She made a decision that Senator T.C. Pino could use campaign funds to help this woman go to law school, whatever it was. She said that's okay? She did not say that was okay, but nor did she decide that it necessarily violated the statute. All she did and all she can do is refer for prosecution. And the reason she... Okay. And did she... But she wouldn't refer for prosecution an expenditure to help someone get an abortion. Is that correct? In the specific circumstance raised before the district court where that donation to the student to get an abortion carried with it significant public political speech, that was the difference there. And although the circumstances of the $200 donation at issue in the Senator's as applied case, that's not before this court. This court is dealing with a facial challenge, but just for the sake of argument, we can go back and look at the record and nothing about this donation actually showed any expressive value. It was a gift to an individual that by itself had very little disclosure and... That is true of any contribution. Every contribution is a gift and the expressive content is by giving this money, do I show support for this cause? And in one case you support the cause of abortion and the other you support for choice and the other you support the cause of letting indigent or less well off people get higher education. What's the difference in the expressive content in the two? Except that she might approve of one and not the other. The difference, Your Honor, again, if we go... So I guess, how can I frame this? To save the stat, we don't need to do any line drawing there or look at that hypothetical to save the statute for constitutionality because even this gift to the student itself, it might not... The abortion gift might not have a first amendment protection, but that doesn't mean that New Mexico's Campaign Reporting Act can't allow it and that the secretary can't promulgate and reasonably interpret the statute to understand that gifts that carry with it the indicia of political speech. That doesn't scare you at all, that the state official can decide, I think that speech is important and that speech isn't. She's not deciding... The prosecution in one case, but not the other. That doesn't disturb you as being fundamentally contrary to first amendment principles. Your Honor, this is not unbridled discretion we're talking about. The regulations and what the district court recognizes a reasonable construction of New Mexico's personal use rules is built into the plain language of the statute and not just 119.29.1 set together, but also in the definitions of 119.26, the secretary... Those regulations and that interpretation that it carries with it, the indicia of speech acknowledges that the expenditure has a subsection G and probably most importantly, subsection P for the purpose of applying A1 of 119.29.1 and subsection P defines an expenditure and A1 of the personal use rule allows all expenditures of the campaign. But the important part of the definition of expenditure is that it must always have a political purpose. And so we can tell that something has a political purpose when a candidate shows that they're giving expressive value, particularly in the context of their campaign, uses of campaign money to further the messaging and operations of the campaign. So we can tell that in the abortion example, because that example had carried with it a measure of publication, a measure of expressive support. Whereas if we look at the actual record of the senator's donation, he in no way publicly made this donation. This was a quiet $200 gift to an individual labeled with a very nondescript, terrible donation to scholarship or something along those lines. And so it's very difficult for us to achieve the purposes of a prophylactic statute like 119.29.1 without flagging donations like that and at least digging a little deeper. And I think you've made your point. We're way over time. So I'd like to make sure my colleagues have a chance to ask any questions they have. Thank you, Judge. Nothing from me. Okay. I think that does it then. Thank you, Mr. Tucker. Did Mr. Baca have any time remaining? Mr. Baca was eight minutes over as well. Okay. Oh, okay. So it worked out very evenly. You each got 23 minutes, so that's good. Even if we were fair inadvertently, at least it ended up being fair. Okay. Thank you very much, counsel. Case is submitted. Counselor excused. Have a good vacation, Mr. Baca. Thank you. Thank you, Your Honor. So there will be an AJ letter, 28-J letter. I'd like a 28-J letter from Mr. Tucker for Thanksgiving by next Wednesday, a week from Wednesday. Yes, Your Honor. That may be all we need. I'm just curious what the law is about candidates raising money without a campaign committee. So the question, Your Honor, just to clarify is under the Campaign Reporting Act, can candidates raise money without a campaign committee? Yeah. It's because of those language in 11929.1a. It is unlawful for a candidate or the candidate's agent to make an expenditure of contributions received. That may be candidate make an expenditure out of the campaign committee funds. I'm not sure what it's referring to, but I couldn't find anything, and I will miss something that requires candidates to have a campaign committee to accept the donations and make expenditures. Great. Thank you, Your Honor. Thank you. Very good. Case is submitted. Counselor excused. We'll be in recess until 9 a.m. tomorrow morning.